## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

**FILED**

___ O'clock & ___ min ___

FEB 1 2 2007

United States Bankruptcy Court
Columbia, South Carolina (9)

| | |
|---|---|
| In re:<br><br>T 2 Green, LLC, d/b/a Kings Grant Golf Course,<br><br>Debtor. | Case No. 05-05781-jw<br><br>Chapter 11 |
| King's Grant Golf Acquisition, LLC as successor to T 2 Green, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>J. L. Abercrombie, *et al.*,<br><br>Defendants. | Adversary Proceeding No. 05-80154-jw |

**ENTERED**

FEB 1 2 2007

**C.H.B.**

## ORDER DENYING MOTION FOR RECONSIDERATION

This matter comes before the Court on the Motion for Reconsideration ("Motion") filed by the following defendants: Elisabeth J. Beebe Trust (which, according to the Motion, is listed as Defendants Robert Beebe, Sr., Robert Beebe, Jr., Betty Beebe, Elizabeth Beebe and Monica Beebe) (collectively, the "Beebe Trust"), Tammy Lynn Hale-Bang (who, according to the Motion, is listed as Defendant Tami Bang), Michael B. Thomas (who, according to the Motion, is listed as Defendant Mike Thomas), Debra Thomas, and Dan Gaudreault (collectively referred to herein as the "Movants"). An Objection and Response (the "Objection") to the Motion was filed by the King's Grant Homeowners Association, Inc. (the "HOA") and the property owners within the King's Grant on the Ashley Subdivision listed on Exhibit A to the Answer and Counterclaim filed on August 2, 2005, less and except the Movants. The HOA and the homeowner defendants described in the Objection are collectively referred to herein as the "Objecting Defendants". KG Golf Acquisition, LLC ("KGGA" or "Plaintiff"), the substitute

plaintiff in this adversary proceeding, joined in the Objecting Defendants' positions at the hearing on the Motion.

This Court has jurisdiction over this proceeding pursuant to 28 U.S.C.A. §§ 1334(a) and (b). Pursuant to Fed. R. Civ. P. 52, made applicable to this proceeding by Fed. R. Bankr. P. 7052,[1] the Court makes the following Findings of Fact and Conclusions of Law.[2]

## FINDINGS OF FACT

1.      King's Grant on the Ashley is a residential subdivision (the "Subdivision") in Dorchester County, South Carolina.   The individual defendants, including the Movants, are property owners within the Subdivision.

2.      Adjacent to the Subdivision is a large tract of land, approximately 177 acres (the "Property"), that was owned and operated by T 2 Green, LLC ("Debtor") and its predecessors as a country club with certain amenities, including an 18 hole golf course.

3.      The Property and the Subdivision were developed by Debtor's predecessor in the early 1970s and are the subject of certain restrictive covenants.   These covenants provide residents of the Subdivision with the right to use certain amenities located on some unspecified portion of the Property upon the payment of dues to the owner of the Property.

4.      Pursuant to the terms of these covenants, the restrictions on the Property may be amended by a vote of fifty-one (51%) percent of the property owners within the Subdivision and the owner of the Property.

5.      Debtor filed a voluntary bankruptcy petition under chapter 11 with this Court on May 17, 2005 (the "Bankruptcy Case") and the Property became property of the bankruptcy estate pursuant to 11 U.S.C. § 541. The Bankruptcy Case was assigned case number 05-05781.

---

[1]      The Federal Rules of Bankruptcy Procedure are cited from time to time in this Order as "Rule _____."

[2]      The Court notes that, to the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent any Conclusions of Law constitute Findings of Fact, they are so adopted.

6.    Neither the Movants nor any other homeowner within the Subdivision individually filed a claim against Debtor's estate. The HOA filed an unliquidated proof of claim.

7.    Shortly after filing its petition, Debtor commenced this adversary against the Movants and the other named defendants (the "Adversary"). Debtor sought to have this Court interpret the restrictive covenants and find that the covenants did not require Debtor to maintain the amenities on the Property in perpetuity for the benefit of the homeowners within the Subdivision under various theories.

8.    The Movants did not file an answer to the Adversary but rather they, and numerous other residents of the Subdivision, granted a Special Limited Power of Attorney ("POA") to the HOA so that the HOA could defend the Adversary on behalf of the Movants and take any and all actions within the Adversary or the Bankruptcy Case deemed by the HOA necessary to protect the Movants' rights.

9.    The POA granted the HOA the right to settle the Adversary subject to the settlement being approved by voting requirements contained in the restrictive covenants and in the HOA's by-laws.

10.    The Movants were allowed to revoke the POA by filing a "Notice of Revocation" in the "Bankruptcy Case," defined by the POA as bankruptcy case number 05-05781.

11.    Prior to settlement of the Adversary, the Movants did not file a Notice of Revocation in the Bankruptcy Case.

12.    At all times prior to the Motion in the Adversary and the Bankruptcy Case, HOA and its HOA's attorneys were authorized to act and acted on behalf of the Movants in the Bankruptcy Case and Adversary.

3

13.    The HOA filed a timely answer to the complaint in the Adversary and filed a counterclaim against Debtor seeking a declaration that the entire portion of the Property was restricted in use to that of a country club and golf course with related recreational amenities.

14.    Debtor and the HOA subsequently filed competing motions for summary judgment.

15.    After a lengthy hearing, the Court entered a detailed ordered which granted in part and denied in part the HOA's motion for summary judgment (the "Partial Summary Judgment Order"). The Partial Summary Judgment Order determined:

   a.    that the Court had jurisdiction over the Adversary pursuant to 28 U.S.C. §§ 1334(a) and (b), and 157(a) and (b), that the Adversary was a core proceeding pursuant to 28 U.S.C.A. §157(b)(2)(A), (M), and (O), and that venue of the Adversary was proper in this Court pursuant to 28 U.S.C.A. § 1409(a);

   b.    that some portion of the Property was restricted to recreational use but that the Court could not determine the size, scope, location, and quality of the restriction on a motion for summary judgment leaving open the question as to whether all of the Property was restricted or whether some lesser portion of the Property was restricted; and

   c.    that Debtor's defenses to the enforcement of the restrictions raised issues of fact that could not be determined on a motion for summary judgment.

16.    The Court reserved jurisdiction to determine the remaining issues, together with the Debtor's equitable defenses, at trial.

17.    After entry of the Partial Summary Judgment Order, Debtor filed its Disclosure Statement and Plan of Liquidation on March 15, 2006. The proposed plan provided for the sale

of the Property to KGGA. Debtor filed an Amendment to Plan of Liquidation on April 12, 2006

(as amended, the "Plan"). Debtor's Plan contained the following provisions pertaining to the

Debtor's transfer of the Property to KGGA and this Adversary:

a.      As provided in Section 2.2 of the Plan, the sale of the Debtor's Property to

KGGA was subject to all restrictions on the Property found by the Court

to exist under the Partial Summary Judgment Order or otherwise in the

Adversary, and KGGA reserved the right to contest the scope and

enforceability of the restriction(s) on the Property.

b.      Pursuant to Section 2.4:

"Notwithstanding any other provision of this Plan, confirmation of
the Plan and transfer of the Property will be without prejudice to
the rights of the Defendants in the Adversary Proceeding, and the
Defendants reserve all of their rights asserted in the Adversary
Proceeding or otherwise. Post-confirmation, the Court will retain
jurisdiction of the core Adversary Proceeding (despite closure of
the Case). The Purchaser (or its successor or assign, if applicable)
will, upon recordation of the deed to the Property from T2 Green
and the payment of the cash payments contemplated by this Plan,
become T2 Green's successor in interest for purposes of the
Adversary Proceeding. The Purchaser will 'step into the shoes of',
and be substituted for, T2 Green as Plaintiff in the Adversary
Proceeding, for all intents and purposes. The parties will be bound
by and receive the benefit of all prior proceedings including,
without limitation, the Order and Judgment entered on February
28, 2006.

The Purchaser and the Defendants will jointly ask the
Bankruptcy Court to schedule a status conference approximately
45 days after the deed to the Property is recorded (or as soon
thereafter as Judge Waites can schedule a status conference in
Charleston). If, by the date of the status conference, the Purchaser
and the Defendants have not entered into a written agreement
resolving the Adversary Proceeding, which agreement will be
subject to approval by this Court (without the necessity of any
further notice), either the Purchaser and/or the Defendants may ask
the Court to address any necessary pre-trial matters and schedule
the Adversary Proceeding for trial."

    c.      Pursuant to Section 7.2:

"...pursuant to Section 2.4 the Debtor will no longer be a party to
the Adversary Proceeding after the transfer of the Property is
completed."

18.    The Plan was confirmed by Order entered on April 14, 2006 and Order

Supplementing Order Finally Approving Disclosure Statement and Confirming Chapter 11 Plan

entered on April 28, 2006. After confirmation of the Plan and Debtor's transfer of the Property

to KGGA, monetary distributions to creditors were paid and the underlying bankruptcy case was

closed on June 30, 2006.

19.    As reflected in the Order entered on May 19, 2006, KGGA became the substitute

plaintiff in this Adversary. By Order entered on August 3, 2006, and based upon statements of

counsel for the parties, including the Movants, that the Adversary might be resolved by

settlement, the Court closed the Adversary and removed it from the trial docket without

prejudice, with the parties retaining the right to file a motion by October 1, 2006 to restore the

Adversary to the trial docket.

20.    The parties filed a Joint Motion to Restore Matter to Trial Docket on September

28, 2006, which was granted by Order entered on October 2, 2006.

21.    On October 10, 2006, the Court entered a scheduling Order and a separate Order

Setting Trial Date which scheduled the trial of the Adversary to begin on December 4, 2006.

22.    On November 21, 2006, KGGA filed a Motion to Abstain pursuant to 28 U.S.C.

§ 1334(c).

23.    On November 22, 2006, the parties, including the Movants acting through the

HOA, submitted a letter informing the Court that at least 51% of the homeowners (the required

amount pursuant to the Recorded Declarations) had approved a settlement proposal submitted by

the Plaintiff pertaining to the subject Property. The letter, among other things, stated that the

Motion to Abstain was moot, requested that the trial be canceled, and stated that the parties intended to submit a proposed Consent Order approving the settlement and closing the Adversary.

24.     The parties submitted the proposed Consent Order to the Court on November 30, 2006. The Consent Order was executed November 30, 2006 by the attorneys for the HOA and KGGA. The Consent Order incorporates a settlement agreement reached by the HOA and KGGA that was executed on November 29, 2006.

25.     Subsequent to the executing of the settlement agreement by the HOA, new counsel for the Movants telefaxed two letters to chambers addressed to the undersigned on November 30, 2006. New counsel for the Movants asserted that the settlement could not be approved without compliance with Fed. Bankr. R. P. 9019 and SC LBR 9019-1.

26.     After considering the Movants' letters, the Court entered the Consent Order on December 1, 2006 approving the defined settlement and closing the adversary proceeding.

27.     On December 11, 2006, the Movants filed the Motion on grounds that the settlement set forth in the Consent Order should have been noticed under Fed. R. Bankr. P. 9019 and SC LBR 9019-1.

28.     The Movants did not submit any affidavits or offer any evidence in support of the Motion. Thereafter, the Objecting Defendants filed the Objection and in conjunction therewith submitted the Affidavit of Lynn Whitner, President of the HOA, with the following attachments:

      a.     Copies of the Special Limited Power of Attorney and Joint Retention and Authorization Agreement signed by all of the Movants.

      b.     Summary from the Board of Governors of King's Grant on the Ashley dated November 10, 2006, and Consent Form, both of which, according to the Affidavit, were sent to homeowners, along with the documents attached to the Consent Order in connection with the settlement with KGGA.

7

c.    November 2006 edition of the <u>Kapers</u> newsletter containing both a discussion of the Suit and the proposed settlement, and a letter from Robert Beebe, Sr., one of the Movants, urging homeowners to vote against the proposed settlement.

The Affidavit explains that: the HOA conducted a lengthy meeting of the homeowners on November 14, 2006 to discuss the Adversary and the proposed settlement; the meeting was attended by many of the Movants, some of whom actively participated by asking questions and/or stating their opposition to the proposed settlement; since the Adversary was filed, the HOA conducted several other homeowner meetings to discuss the Adversary and possible settlements, and the HOA kept homeowners advised through the <u>Kapers</u> newsletter and special announcements; both the President of the HOA and legal counsel to the HOA reviewed the Consent Forms submitted by homeowners and determined that, as required by the Recorded Declarations, at least 51% of the homeowners voted to approve the settlement with KGGA. The Movants have not disputed these facts asserted by the Objecting Defendants but do wish to challenge the propriety of the homeowners' vote.

29.    At the hearing on the Motion, the Movants challenged the subject matter jurisdiction of this Court to enter the Consent Order. The Court took the matter under advisement and provided the parties with an opportunity to submit proposed orders so that the matters raised at the hearing may be more fully addressed.

## CONCLUSIONS OF LAW

I.    **This Court has Jurisdiction Over this Adversary**

Although not asserted in their Motion, the Movants now challenge the jurisdiction of this Court to enter the Consent Order. <u>See</u> <u>Bragg v. West Virginia Coal Asso.</u>, 248 F.3d 275, 299 (4th Cir. 2001) (finding that the power of the court to enter a consent decree is contingent on the court having subject matter jurisdiction). Therefore, the Court will first address whether it had

subject matter jurisdiction to enter the Consent Order prior to considering whether it should reconsider the Consent Order pursuant to Fed. R. Bankr. P. 9023. Because a federal court is a court of limited jurisdiction, the court is to presume that it is without jurisdiction. See Seeger v. Superior Diesel, Inc., 409 F.Supp.2d 669, 670 (D.S.C. 2005).

A.      **Subject Matter Jurisdiction**

Subject matter jurisdiction is bestowed on this Court by 28 U.S.C. § 1334.[3]   The complaint alleges that this Court has jurisdiction, the Partial Summary Judgment Order found that the Court had jurisdiction, and the confirmed Plan provided that the Court would retain jurisdiction. In their answer to the complaint, the Movants specifically admitted, through the HOA, that the Court had subject matter jurisdiction, they did not appeal the Partial Summary Judgment Order for want of jurisdiction, and they did not oppose the retention of jurisdiction in the Plan. Despite these previous admissions of jurisdiction, the Movants cannot create subject matter jurisdiction by consent nor may they waive a lack of subject matter jurisdiction by their failure to previously raise the issue.[4]   See In re Resorts International, Inc., 372 F.3d 154, 161 (3rd Cir. 2004) (finding the parties cannot by consent create subject matter jurisdiction where it otherwise does not exist); In re Sahni, 227 B.R. 748, 752 (D. Kan. 1998) (finding parties may not waive subject matter jurisdiction).

---

[3]      28 U.S.C. § 1334(b) provides in part:

> (b) Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

[4]      Oddly, the Movants rely on KGGA's Motion to Abstain and language used by the HOA in its Objection to support its position that the Court lacks subject matter jurisdiction based upon the statements of these parties. To the extent that the Movants would have the Court apply any theory of estoppel or waiver based upon these pleadings, the Movants would likewise appear to be estopped based upon their failure to object to the Plan- assuming these theories are viable within the context of subject matter jurisdiction.

To determine whether the Court has subject matter jurisdiction, it may go beyond the face of the complaint. See National Collegiate Recreation Services v. Chertoff, 447 F.Supp.2d 527, 529 (D.S.C. 2006). The complaint and the record of this case clearly demonstrate that this Court has subject matter jurisdiction. When this Adversary was initiated by the Debtor, the outcome of this proceeding could have clearly had an effect on the Debtor's bankruptcy estate. See Owens-Illinois, Inc. v. Rapid American Corp. (In re Celotex Corp.), 124 F.3d 619, 625-626 (4th Cir. 1997) (discussing ""related to" jurisdiction under 28 U.S.C. § 1334). Indeed, the outcome of this case was crucial for the Debtor.[5] A favorable outcome would have likely ensured a substantial increase in the value of the Property and thus the distribution to creditors; whereas an unfavorable outcome would have likely further decreased the value of the Property and have bound the Debtor and its successors to maintaining a property that, according to the complaint, was not economically feasible. See id. at 626 (noting that a certain alternation of a debtor's rights and liabilities is not required but only the possibility of such an alteration or impact on the handling or administration of the bankruptcy estate). Therefore, the finding of jurisdiction under 28 U.S.C. § 1334 was proper in the Partial Summary Judgment Order because this Adversary could have had an effect on the Debtor's rights and the administration of the estate when it was filed and thus there was "related to" jurisdiction under 28 U.S.C. § 1334(b).

Within the context of 28 U.S.C. § 1334, the Fourth Circuit has found that subject matter jurisdiction cannot be divested by subsequent events. See id. (citing Freeport-McMoRan, Inc. v. K N Energy, Inc., 498 U.S. 426, 428, 111 S.Ct. 858, 859, 112 L.Ed.2d 951 (1991)). In Owens, the Fourth Circuit found that the district court had subject matter jurisdiction under 28 U.S.C. § 1334 over a pending action removed from state court between two non-debtors

---

[5]    As stated in Debtor's Disclosure Statement; "allowed uses of the Property have been a critical issue in this case."

notwithstanding a settlement between one of the parties and the debtor and the provisions of the confirmed plan, each of which may have otherwise eliminated jurisdiction under 28 U.S.C. § 1334 if the adversary was not pending at the time of these events. See Owens, 124 F.3d at 624-626. In this case, the sale of the Property and the substitution of KGGA as plaintiff were nothing more than events subsequent to the commencement of the Adversary. Under applicable precedent, these events cannot divest this Court of jurisdiction.[6] See id.

## B.    Retention of Jurisdiction

Though not raised by the Movants nor addressed by the Fourth Circuit in Owens, there may be an outstanding question as to whether this Court should have continued to exercise jurisdiction over this Adversary.[7] As discussed in Chapman v. Currie Motors, Inc., 65 F.3d 78 (7th Cir. 1995), a bankruptcy court can, within its discretion, relinquish jurisdiction over a pending adversary involving state law causes of action between non-debtors when the underlying

---

[6]       This holding is consistent with the general principal of law that jurisdiction is not lost by the confirmation of a chapter 11 plan or the closing of the main case. See Celotex Corp. v. Edwards, 514 U.S. 300, 308, 115 S.Ct. 1493, 1499, 131 L.Ed.2d 403 (1995) (finding that 28 U.S.C. § 1334 was "intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate."); In re Carraher, 971 F.2d 327, 328 (9th Cir. 1992) (per curiam) (finding a bankruptcy court does not lose jurisdiction over a pending adversary even though the bankruptcy case is dismissed); In re Koerkenmeier, 344 B.R. 603, 607 (Bankr. W.D. Mo. 2006) (citing cases and holding in a chapter 11 that jurisdiction does not end once a case is confirmed but is rather granted pursuant to 28 U.S.C. § 1334); In re Green, C/A No. 03-05607-W, slip op. (Bankr. D.S.C. Apr. 1, 2005) (finding jurisdiction is not contingent on a case being "open"). It is also consistent with the opinions of other federal courts interpreting other statutes granting federal courts jurisdiction. For example, 28 U.S.C. § 1345 grants the federal district courts original jurisdiction over all civil actions commenced by the United States. See 28 U.S.C. § 1345. Jurisdiction under this section is not lost if a third party is substituted for the United States as the plaintiff. See Muñoz Bermudez v. Industrial Siderurgica, Inc., 672 F.Supp.2d 57 (D.P.R. 1987). See also, Hardenbergh v. Ray, 151 U.S. 112, 14 S.Ct. 305, 38 L.Ed. 93 (1894) (finding that the substitution of parties cannot defeat jurisdiction of a pending action in federal court). Similarly, events such as a change of citizenship or reduction of the amount demanded to below the jurisdictional limit cannot divest the federal court of jurisdiction under 28 U.S.C. § 1332. See Hood ex rel. North Carolina Bank & Trust Co. v. Bell, 84 F.2d 136 (4th Cir. 1936) (citing cases under former 28 U.S.C. § 42). Jurisdiction is also not lost under 28 U.S.C. § 1331 once the federal claim upon which jurisdiction is based becomes moot or is dismissed. See Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 1213-1214, 25 L.Ed.2d 442 (1970) (finding when an issue regarding the constitutionality of a state law became moot, the federal court did not lose jurisdiction over the pendent claim); Lindquist v. Dilkes, 127 F.2d 21 (3rd Cir. 1942). Because this Court had subject matter jurisdiction when this Adversary was filed, the substitution of KGGA as plaintiff and the confirmation of the Debtor's Plan do not divest this Court of jurisdiction. See Owens, 124 F.3d at 626.

[7]       This argument is likely waived by the Movants since they failed to raise it in their Motion and at the hearing where the Movants focused solely on this Court's alleged lack of jurisdiction and failure to notice the settlement pursuant to Fed. R. Bankr. P. 9019.

bankruptcy case is resolved. See Chapman, 65 F.3d at 81 (citing cases and finding that an adversary pending upon the resolution of a bankruptcy case is functionally equivalent to supplemental jurisdiction allowed under 28 U.S.C. § 1367 even though this statute is not necessarily applicable to a bankruptcy case). Though not identical to the facts in Chapman, the Movants' argument essentially indicates that subsequent events in this case diminished the need to retain jurisdiction since the outcome of this case may no longer impact Debtor's estate. See id. (determining whether a bankruptcy court should retain jurisdiction over a pending adversary after a bankruptcy case is dismissed).

In order to determine whether a court should retain jurisdiction over a remaining adversary after the resolution of the matter upon which jurisdiction was originally based, courts weigh the following factors: judicial economy, convenience to the parties, fairness, and comity. See In re Porges, 44 F.3d 159, 163 (2nd Cir. 1995) (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 619, 98 L.Ed.2d 720 (1988)); Shanaghan v. Cahill 58 F.3d 106 (4th Cir. 1995) (utilizing the same factors to determine whether a court should decline to exercise jurisdiction once the amount in controversy in a diversity action falls below the statutory minimum). Weighing these factors, it is evident that retention of jurisdiction of the Adversary was proper and this Court was correct in exercising its discretion to retain jurisdiction. See Porges, 44 F.3d at 163 (finding nothing mandates that a bankruptcy court dismiss an adversary once the underlying bankruptcy is resolved).

First, the Court believes that judicial economy was best served by retaining jurisdiction over this Adversary. The parties and the Court have each spent considerable resources in this matter. The Court was intimately familiar with the facts based upon its considerable time spent preparing for trial and issuing a detailed order in response to the parties' motions for summary judgment. The parties and the Court were prepared to try this matter and the Consent Order was

entered into days before the scheduled trial. It would have been unfair to the parties and a waste of resources to have this matter start fresh in another court on the eve of a trial given this Court's background with this matter.

Second, the convenience of the parties was served by retaining jurisdiction. This Court sits in Charleston, South Carolina, a county that is adjacent to the county containing the Property and the Subdivision. Many of the lawyers involved in this matter have offices in Charleston and therefore the Court finds that convenience of the parties would not have been better served by relinquishing jurisdiction.

It was also fundamentally fair for the Court to retain jurisdiction. At all times prior to the Consent Order, the Movants consented to the continuing jurisdiction of this Court. This Court and the other parties relied upon that consent. Each party completed discovery and was prepared for trial. To have a small minority of the homeowners, dissatisfied with losing a vote to their fellow homeowners, attempt to revoke that consent and undo that which has been done would be to the considerable disadvantage of those who have expended considerable resources preparing for trial and consistently looked to this Court to resolve this matter judiciously and efficiently. Thus, the Court believes that fairness weighed heavily in favor of retaining jurisdiction.

Finally, comity with the state court system was not impaired by the retention of jurisdiction. The matters involved in this case were not unique matters of state law but involve the interpretation of restrictive covenants, an issue for which there is ample guidance from South Carolina case law. Although a similar action was pending in state court when the Bankruptcy Case was filed, that action was stayed for more than two years by the bankruptcy and there was no indication from the parties that discovery was concluded in that action, that KGGA was substituted for the Debtor, or that the matter was ready for trial and would be reached soon.

### C.    The Movants Consented to the Bankruptcy Court Hearing the Adversary

Even if, after the substitution of KGGA for the Debtor as plaintiff,[8] the matter was no longer a core proceeding, this Court retained jurisdiction and an ability to enter the Consent Order. See Owens, 124 F.3d at 626 (holding a court cannot lose jurisdiction by subsequent events); Vieira v. AGM, II, LLC, 2:06-cv-03111-PMD, slip op. at 10 (D.S.C. Jan. 22, 2007) (finding that bankruptcy courts have subject matter jurisdiction over non-core matters); In re EXDS, Inc., 352 B.R. 731, 732 (Bankr. D. Del. 2006) (citing cases and holding that the determination as to whether a matter is core or non-core has no bearing on the subject matter jurisdiction of the bankruptcy court). While the ability of this Court to enter judgment in a non-core matter is constrained by 28 U.S.C. § 157(c), which allows this Court to submit its proposed findings to the District Court, the parties may expressly or implicitly consent to this Court hearing and entering a final judgment in a non-core matter. See In re Johnson, 960 F.2d 396, 400 (4th Cir. 1992).

Assuming this matter was a non-core proceeding, the Movants expressly and implicitly agreed to have this Court hear this matter and enter judgment. The Movants were at all times prior to the Motion represented by the attorneys for the HOA in this matter.[9] Pursuant to the Plan, served upon the HOA, the Property was transferred to KGGA and this Court retained jurisdiction over the Adversary so that the matter may be tried and judgment entered. See Goodman v. Phillip R. Curtis Enterprises, Inc., 809 F.2d 228, 232 (4th Cir. 1987) (finding the bankruptcy court has post-confirmation authority concerning the implementation or execution of

---

[8]    The Movants have not challenged whether this proceeding is a core proceeding and have therefore waived the issue.

[9]    The Movants have still not revoked the POA by filing a Notice of Revocation in the Bankruptcy Case. Even if the Court were to assume that the Motion is sufficient to indicate that the attorneys for the HOA no longer represent the Movants, the Motion was filed after the HOA settled the matter with KGGA, after the HOA communicated the settlement to the Court, and after the entry of the Consent Order.

a confirmed plan). The Plan also identifies this Adversary as a core proceeding. Though authorized with the power to act on behalf of the Movants in the Bankruptcy Case, the HOA did not object to these provisions of the Plan. The Plan was subsequently confirmed, thereby binding the Movants. See In re Varat Enterprises, Inc., 81 F.3d 1310, 1315 (4th Cir. 1996) (provisions of a confirmed Plan have res judicata effect); Resorts International, Inc., 372 F.3d at 161 (finding that a retention of jurisdiction clause in a chapter 11 plan will be given effect if the court has jurisdiction over the matter). Further, as reflected in this Court's May 19, 2006 Order denying the HOA's motion to reconsider the Partial Summary Judgment Order, the HOA consented to KGGA being substituted as plaintiff and agreed to allow and in fact jointly requested that this matter to proceed to trial and judgment in this Court. The Movants have also made other appearances through the HOA after KGGA was substituted as plaintiff and at no time questioned the authority of this Court to proceed to trial and enter judgment. The Movants, though now represented by new counsel, still have not raised this issue despite the entry of the Consent Order in this matter and could not raise the matter now under the doctrines of waiver, laches, and estoppel. See Galaxy Computer Services, Inc. v. Baker, 325 B.R. 544, 553 (Bankr. E.D. Va. 2005) (finding, in the Fourth Circuit, a party cannot challenge whether a matter is core if the challenge is made after the entry of an unfavorable order). By the totality of their actions, the Movants have acquiesced to the ability of this Court to hear this case and enter judgment. Therefore, to the extent that this proceeding may no longer be a core proceeding, the Court finds that the Movants have waived their right to challenge the entry of the Consent Order. See Johnson, 960 F.2d at 400.

## II.    Motion to Reconsider

### A.    Standard for Granting a Motion Pursuant to Fed. R. Bankr. P. 9023

The Movants filed the Motion as a motion to reconsider.  As Judge Norton has held, the federal rules do not recognize a motion to reconsider and thus the Court will treat the Motion as a motion to alter or amend the Consent Order pursuant to Fed. R. Civ. P. Rule 59(e), made applicable by Fed. R. Bank. P. 9023.  See McCall v. Williams, 59 F.Supp.2d 556, 558 (D.S.C. 1999).  A court may grant a motion to alter or amend judgment in three circumstances: "(1) to accommodate an intervening change in controlling law, (2) to account for new evidence not available at trial, or (3) to correct a clear error of law or prevent manifest injustice." Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998); In re Midlands Utility, Inc., 253 B.R. 683, 688 (Bankr. D.S.C. 2001) (citing Alexander v. Britt, 89 F.3d 194 (4th Cir. 1996)) (finding a consent decree may be modified to the same extent as if it had been entered as a judgment after a full trial). "'Reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly.'" Id. (quoting 11 Wright et al., *Federal Practice and Procedure* § 2810.1, at 124 (2d ed. 1995)).  The Movants bear the burden of proof in demonstrating that the Consent Order is invalid or that they are otherwise entitled to relief under Rule 9023.  See Dunes Hotel Associates v. Hyatt Corp. (In re Dunes Hotel Associates), C/A No. 94-75715-W, Adv. Pro. No. 95-8042-W, slip op. at 13-14 (Bankr. D.S.C. Dec. 6, 1995).

The Movants assert a single ground for relief in the Motion: "…that there has been a clear error of law or manifest injustice." "Courts have generally not defined what constitutes 'clear error' under Rule 59(e)." Piper v. U.S. Dept. of Justice, 312 F.Supp.2d 17, 21 (D.D.C. 2004). See also, Pacific Ins. Co., 148 F.3d at 403-404 (affirming the district court's decision to alter a judgment pursuant to the "clear error" standard); Dunes Hotel, slip op. at 13-14 (discussing the clear error standard). "Clear error" should conform to a "very exacting standard"

and the court should have "a clear conviction of error" before finding that a final judgment was predicated on clear error. See Lightfoot v. District of Columbia, 355 F.Supp.2d 414, 422 (D.D.C. 2005) (citing Oneida Indian Nation of New York v. County of Oneida, 214 F.R.D. 83, 98 (N.D.N.Y. 2003). As the Seventh Circuit noted, a final judgment must be "dead wrong" to constitute clear error. See Parts & Elec. Motors, Inc. v. Sterling Elec., Inc., 866 F.2d 228, 233 (7th Cir.1988). While the "manifest injustice" standard is even more vague than "clear error," it can be said that "manifest injustice does not exist where, as here, a party could easily have avoided the outcome, but instead elected not to act until after a final order had been entered." Lightfoot, 255 F.Supp.2d at 422 (citing Ciralsky v. CIA, 355 F.3d 661, 673 (D.C.Cir. 2004). The Movant must also show that the error was prejudicial or that alteration of the Consent Order would otherwise serve some useful purpose. See Dunes Hotel, slip op. at 13-14 (citing cases); 11 Wright et al., *Federal Practice and Procedure* § 2810.1, at 128 (2d ed. 1995) (stating that courts will deny a motion to alter a judgment if alteration would serve no useful purpose).

## B.    The Movants Failed to Demonstrate a Clear Error of Law or Manifest Injustice

The thrust of the Movants' Motion is that the failure to provide notice[10] of the Settlement under Rule 9019 and SC LBR 9019-1 "is a clear error of law and creates a manifest injustice."[11] The Movants assert that notice should have been provided so that they and other defendants who do not agree with the settlement can object to and challenge the settlement.

---

[10]    As described in the Affidavit of Lynn Whitner, The Movants did receive notice of the proposed settlement.

[11]    Though the failure to notice under Rule 9019 was briefed in their Motion, The Movants' proposed order in this matter appears to abandon this argument in favor of lack of jurisdiction, which may be raised at any time, and abstention, an argument not advanced in the Motion or at the hearing on the Motion. The Court will nevertheless address the merits of the Movants' argument under Rule 9019. It will not address portions of the Movants' proposed order suggesting that this Court should abstain from this Adversary since no timely motion for abstention was filed or otherwise timely raised by the Movants.

**i.    Failure to provide notice under Rule 9019 was not a clear error of law since such notice would serve no useful purpose and lack of such notice did not prejudice the Movants.**

Rule 9019(a) provides:

"On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct."

Fed. R. Bankr. P. 9019.

SC LBR 9019-1 provides:

Notice of settlement or compromise must be filed and served within ten (10) days after the report of settlement to the Court using the passive notice procedure prescribed by SC LBR 9014-2 and by using attached Exhibit A, and must be served on all creditors and parties in interest in accordance with Fed. R. Bankr. P. 2002 and on any other entity as the Court may direct. The Notice of Settlement must: (1) be signed by the attorneys (or parties appearing pro se) for the settling parties; (2) be accompanied by a consent order containing their signatures; or (3) be accompanied by a certification of the filing party that the terms set out in the Notice of Settlement are complete and have been agreed upon by the parties. If the Notice of Settlement is not timely filed and served, the Court may enter an appropriate order, which may grant judgment against the party responsible for the delay.

SC LBR 9019-1.

The Movants' argument for notice under Rule 9019 is based principally upon the "stepping into the shoes" language contained in the Plan whereby KGGA stepped "into the shoes" of the Debtor in the Adversary. This argument does not follow because a straightforward application of Rule 9019 would result in KGGA providing notice to parties other than the Movants and their fellow homeowners. Rule 9019 provides that only creditors and certain other parties receive notice of a compromise. The Movants did not individually file a timely claim that was allowed by the Plan and therefore are not creditors of the estate nor among the class of

parties that would otherwise receive notice under Rule 9019.[12]  It would be illogical to apply

Rule 9019 to the Movants and their fellow homeowners since as participants in the Consent

Order, these individuals would not receive separate notice of the Consent Order even pursuant to

the plain language of Rule 9019.[13]

Additionally, the Movants designated the HOA as their agent in this Adversary and

provided the HOA with the power to settle the Adversary based upon a majority vote of the

homeowners.[14]  See Martin v. U.S., 249 F.Supp. 204, 208 (D.S.C. 1966) (finding that a special

power of attorney is to be strictly construed so as to carry out rather than defeat the purpose of

the appointment).  HOA settled this action twelve days before the Motion and a day before the

Movants' new attorney wrote the Court.  The Movants are bound by the acts of their agent in

settling this matter and therefore the Court cannot find a clear error in approving of the

settlement entered into by the HOA.

Therefore, the Court does not find a clear error of law in the failure to notice to the

Movants under Rule 9019 because the Movants would not be entitled to notice and Rule 9019

notice would otherwise serve no useful purpose since the Movants are bound by the acts of their

agent.

---

[12]       The HOA filed an unliquidated claim pursuant to the POA but the claim does not include an address for the Movants or other homeowners.  The claim appears to be an attempt to reserve the HOA's legal and equitable rights to enforce the restrictive covenants.  The POA specifically provides that if the Movants have a claim against Debtor's estate separate and distinct from the enforcement of the restrictive covenants that they should file such claims in the Bankruptcy Case.

[13]       It does not appear that the Plan allowed the claim of HOA since the HOA is not among the parties listed as a creditor in the disclosure statement and the HOA's unliquidated claim was not provided for by the Plan.

[14]       One of the Movants' attorneys argued that the POA does not grant the HOA the power to settle the Adversary; however, this argument does not appear to be supported by the plain language of the POA.  The Movants' attorney also indicated that a hearing was necessary regarding alleged misrepresentation made by "the debtor" to the bank financing the development.  Nothing in the Motion or the Movants' proposed order indicate how any alleged misrepresentations by Debtor support the Motion or otherwise entitle the Movants to relief.

ii.      **Failure to provide notice under Rule 9019 did not result in manifest injustice.**

The Court cannot find that entry of the Consent Order worked a manifest injustice on the

Movants or that a manifest injustice could otherwise be prevented by granting the Motion.

Based upon the representations of the HOA, the party that represents the vast majority of

homeowners within the Subdivision, the vote to amend the restrictive covenants within the

Subdivision passed by a majority vote, making the settlement of this matter proper under the

restrictive covenants and the powers granted to the HOA by the clear terms of the POA.  The

Movants merely appear to be in the minority of homeowners that voted against the settlement

and are bound in this action by a majority vote pursuant to the restrictive covenants.  See

Evergreen Highlands Asso. v. West, 73 P.3d 1, 7 (Colo. 2003) (finding a majority vote to amend

restrictive covenants binds all homeowners).  The Movants offered no evidence that the vote did

not pass but only speculate that the vote may have been improper.  This speculation is not

enough to demonstrate that the entry of the Consent Order was manifestly unjust since the POA

clearly establishes an agency relationship that gives the HOA the power to settle this Adversary,

settlement occurred before the Movants revoked the POA, and the restrictive covenants indicate

that the Movants are bound by a majority vote to amend the restrictive covenants.  See Clements

v. Macheboeuf, 92 U.S. 418, 425 (1875) (finding there is a presumption that the agent acted for

the principal under a power of attorney where it appears that the agent acted in accordance with

the power); In re Paolino, 89 B.R. 453, 461 (Bankr. E.D. Pa. 1988) (finding that once an agency

relationship is established, the burden is on the principal to demonstrate that the agent acted

beyond the scope of his authority).   Furthermore, the HOA submitted the settlement through its

attorneys.  The Movants also offered no evidence that the HOA's attorneys lacked the authority

to settle this matter for the HOA, the only party to answer in this Adversary, or that the HOA's

attorneys acted improperly in submitting the Consent Order.  See Bethlehem Steel Corp. v.

20

Devers, 389 F.2d 44, 45-46 (4th Cir. 1968) (finding a party must demonstrate by clear and convincing evidence that his attorney lacked the authority when attempting to invalidate a judgment); Crowley v. Harvey & Battey, P.A., 327 S.C. 68, 488 S.E.2d 334 (S.C. 1997) (finding "In South Carolina, an attorney may settle litigation on behalf of his client, and absent fraud or mistake, such a settlement is binding on the client."); Teter v. Irwin, 71 S.E. 115, 118 (W.Va. 1911) (finding that the burden is on the moving party to clearly demonstrate that his attorney lacked authority to settle a civil action).

The Movants could have prevented the outcome in this case by properly withdrawing their consent prior to the HOA entering into the settlement on November 29, 2006. A meeting of homeowners occurred in mid-November and certain notices were provided to the homeowners in early November. If the Movants disagreed with the sufficiency of the notice or the direction the vote took, they could have withdrawn their consent under the POA by filing a Notice of Revocation in the Bankruptcy Case before November 29, 2006 or otherwise timely challenged the authority of the HOA in court. They did not do so and therefore the Court cannot find manifest injustice since the Movants are bound by the POA and the authority of the HOA to settle this matter at the time of settlement. See Lightfoot, 255 F.Supp.2d at 422 (noting that a court should not apply manifest injustice where the party could have prevented the outcome).

The Movants alternatively argued that a hearing should have nevertheless been had because 49% of the homeowners voted against approval of the settlement. This argument appears to be contrary to the plain language of the restrictive covenants that permits modification by a majority vote and the power granted to the HOA to settle this action. See e.g., Wilchester West Concerned Homeowners LDEF, Inc. v. Wilchester West Fund, Inc., 177 S.W.3d 552 (Tex. Ct. App. 2005) (finding an amendment to a restrictive covenant valid and binding on all owners since it passed by the requisite majority vote notwithstanding any lack of notice). Neither

document requires notice or a court hearing to modify the restrictive covenants or enter into a settlement agreement reflecting the modification. While 49% is a large percentage of homeowners that did not agree with the compromise, it is nevertheless a minority position.[15] The Court cannot find that entry of the Consent Order was manifestly unjust or that manifest injustice could be prevented by granting the Motion given that the Movants are bound by the majority decision of homeowners within their Subdivision and the Movants are bound by the acts of the HOA at the time of settlement on November 29, 2006.[16]

### iii.    Fed. R. Bankr. P. 9019 and SC LBR 9019-1 do not apply.

Perhaps to get around a plain reading of Rule 9019, the Movants rely upon the "stepping into the shoes" language of the Plan for the proposition that, since KGGA purchased the rights of Debtor in the Property, it should have noticed the Consent Order pursuant to Rule 9019. However, in the reorganization KGGA is not the successor of Debtor and did not acquire all of its rights and liabilities. The Movants acknowledge as much in previous representations to the Court. While represented by the HOA, the Movants through the HOA filed a second motion for summary judgment on November 21, 2006. The HOA sought judgment on grounds that KGGA could not assert certain actions and defenses in this Adversary because KGGA was not the Debtor and did not have the same rights and liabilities as the Debtor. Having now splinted off from the HOA, the Movants seek to change this position to their benefit and essentially assert that KGGA and the Debtor are one in the same for purposes of this Adversary. The doctrine of judicial estoppel prevents the Movants from maintaining this position given that they previously and intentionally asserted an opposite position of fact with this Court and now seek to change this position, which would give them an unfair advantage in this Adversary. See Allen v. Zurich

---

[15]    The restrictive covenants specifically state that the Movants, by accepting the deed to their residences within the Subdivision, agree that the covenants may be amended by a majority vote.

[16]    Any remedy that Movants seek against the HOA would appear to be in state court.

Ins. Co., 667 F.2d 1162, 1666-1667 (4th Cir. 1982) (discussing judicial estoppel and noting that it cannot be reduced to a formula but should be applied to prevent parties from "playing fast and loose" with the courts); In re Swilley, 295 B.R. 839, 850 (Bankr. D.S.C. 2003) (discussing judicial estoppel).

The Movants also quote from and rely on Section 2.4 of the confirmed Plan in an effort to bolster their position; however, that Section is contrary to the relief requested in the Motion. The Section provides that a written agreement resolving the Adversary will be subject to approval by the Court, but without the necessity of any further notice. The Section does not state or imply, as the Movants assert, that the "without the necessity of any further notice" provision is dependent upon a settlement occurring by the date of the first post-confirmation status conference in this action. The only consequence of a settlement not occurring within the described timeframe was that KGGA and/or the Defendants "may ask the Court to address any necessary pre-trial matters and schedule the Adversary Proceeding for trial." It was neither expressed nor implied that Rule 9019 would apply if settlement did not occur by a certain date. Further, it would also be inconsistent to hold that Rule 9019 can be waived for some purposes but not for others. Rule 9019 either applies or does not apply. In this case, Rule 9019 is inapplicable.[17]

Based upon the plain language of Rule 9019, notice of the Consent Order to the Movants was not required. The terms of the Plan do not alter or require the application of Rule 9019. Additionally, assuming Rule 9019 applied, failure to provide notice was not a clear error of law or manifestly unjust since the Movants would not be entitled to notice and are otherwise bound by the acts of the HOA and the majority vote of homeowners within the Subdivision. Therefore,

---

[17]    Rule 9019 only requires a notice of a compromise when the action involves a trustee or a debtor. See Fed. R. Bankr. P. 9001(10) (defining the term "trustee" to includes a debtor-in-possession in a Chapter 11 case). Nothing in the rules indicates that notice is required under Rule 9019 when a suit involves a party purchasing the rights of a debtor and neither the Court nor the Movants identified any case law holding that a purchaser is required to provide such notice. Therefore, Rule 9019 is, by its terms, clearly inapplicable as the settlement in this case does not involve a trustee or a debtor.

to the extent the Motion seeks to alter or amend the Consent Order based upon a failure to provide notice under Rule 9019, the Motion is denied.

### C.        Approval of the Consent Order was proper.

Ordinarily, judicial approval of a settlement is not necessary; however, a court may invoke its equitable power to approve and enforce a settlement. See In re Masters Mates & Pilots Pension Plan and IRAP Litigation, 957 F.2d 1020 (2nd Cir. 1992); Wood v. Virginia Hauling Co., 528 F.2d 423, 425 (4th Cir. 1975) (finding courts have the inherent power to supervise and aid in the implementation of a settlement). 28 U.S.C. § 157(b)(1) also provides that this Court may enter appropriate orders and judgments. Entry of the Consent Order was necessary in this case to end the Adversary and thus the Court will review the standard for entry of a consent decree to determine if a clear error of law was made in entering the Consent Order. See U.S. v. North Carolina, 180 F.3d 574, 581 (4th Cir. 1999) (reversing the district court for failing to enter a consent decree submitted by the parties).

Without blindly accepting the terms of a proposed settlement, the Court is guided by the general principle that settlements are encouraged. See id. The Court must be satisfied that the agreement is "fair, adequate, and reasonable" and "is not illegal, a product of collusion, or against the public interest." Id. The "court should consider the extent of discovery that has taken place, the stage of the proceedings, the want of collusion in the settlement and the experience of plaintiffs' counsel who negotiated the settlement." Carson v. American Brands, Inc., 606 F.2d 420, 430 (4th Cir.1979) (en banc) (Winter, Circuit Judge, dissenting), (adopted by Carson v. American Brands, Inc., 654 F.2d 300, 301 (4th Cir.1981) (en banc) (per curiam). The court need not conduct a mini-trial or have a hearing to approve a settlement. See North Carolina, 180 F.3d at 581.

In this case, the Court is satisfied that the Consent Order was fair, adequate, and reasonable. Although the HOA won a partial summary judgment, both they and KGGA bore substantial risk in proceeding to trial given the ambiguity of the restrictive covenants and the complex history of facts between the parties. This Court could have easily concluded that only a small portion of the Property was restricted or that KGGA had no duty to maintain recreational amenities on the Property. Either of these outcomes would have likely substantially reduced the value of the Movants' residences as the Property would have either been fully developed by KGGA or KGGA could have left the Property fallow and in disrepair. The Consent Order strikes a fair and reasonable balance between a full victory and a total loss for the parties and results in only a limited, known portion of the Property being developed and the remainder specifically dedicated for the use and enjoyment of the Movants and other homeowners.[18] Neither the HOA nor KGGA rushed to settlement, but rather proposed settlement only after the parties had completed discovery to fully develop the facts and assess the risks of proceeding to trial. The HOA was also represented by one of the most skilled bankruptcy attorneys within the District, which provides the Court with an additional level of confidence that the settlement was in the best interest of the parties represented by the HOA, which included the Movants at the time the HOA executed the Consent Order. See Becher v. Long Island Lighting Co., 64 F.Supp.2d 174, 178 (E.D.N.Y. 1999) (giving weight to the experience of counsel within the context of a class action settlement). The terms of the settlement appear fair, adequate, and reasonable based upon the facts of this case.

There is no evidence of collusion by KGGA and the HOA or that the agreement reached is otherwise illegal or against the public interest. When this suit was filed, the HOA obtained a

---

[18]    Along with other consideration, KGGA will refurbish and reconstruct certain of the amenities that are in disrepair and provide the HOA with $150,000.00 to use for the benefit of the Subdivision.

POA from approximately 87% of the homeowners, including the Movants, and was specifically authorized to settle this Adversary if a modification of the restrictive covenants was approved by 51% of the homeowners.  Although the Movants theorize that the vote approving the settlement may have been improper, they offer no evidence whatsoever to support this allegation.  To the contrary, it appears that the settlement was reached through a fair and open process by which the Movants and the other homeowners received notice of the proposed settlement, had an opportunity to comment on the settlement, and, ultimately, voted on the settlement.  The HOA, as the representative for the majority of the homeowners[19] and the only party to answer the Adversary, had the actual and apparent authority to settle this Adversary.  Settlement was also entered into before the Movants revoked the authority of the HOA under the POA and therefore it cannot be held that the HOA exceeded its authority by entering into the settlement thereby binding the Movants.  The settlement appears to be nothing less than an arms-length agreement between the HOA and KGGA.  Thus the Court finds it acted properly in entering the Consent Order on December 1, 2006.  See North Carolina, 180 F.3d at 582 (finding a party should not be allowed to withdraw their consent to settle based upon a change of heart).

## CONCLUSION

The Motion appears to be nothing more than sour grapes over the loss of a majority vote to their fellow homeowners.  The Movants offer no substantive evidence to support their Motion, only speculation that is not enough to demonstrate grounds to alter or amend the Consent Order.  Though the Court is sensitive to the Movants' displeasure with the result of the vote, the result appears to be a consequence of buying property in a subdivision where the majority rules.  When presented with the Consent Order necessary to resolve a proceeding, this Court relied on the

---

[19]     Under the POA the HOA could conceivably still represent the Movants since the Movants have not filed a Notice of Revocation.

actual and apparent authority of the counsel submitting the documents and the approved agreement since it appeared to be fair and reasonable and the product of an open, arms-length transaction.   As jurisdiction was not lost upon the substitution of KGGA as plaintiff, the Court finds that the entry of the Consent Order was not a clear error of law or manifest injustice and therefore it denies the Motion.

**AND IT IS SO ORDERED.**

UNITED STATES BANKRUPTCY JUDGE

Columbia, South Carolina
February *12*, 2007